[Cite as *State v. Runnion*, 2022-Ohio-3785.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

MICHAEL RUNNION,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 BE 0029**

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 20-CR-190

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor, *Atty. Daniel P. Fry,* Assistant Prosecutor,  52160 National Road, St. Clairsville, Ohio 43950, for Plaintiff-Appellee and

*Atty. Rhys B. Cartwright-Jones*, 42 N. Phelps Street, Youngstown, Ohio 44503, for Defendant-Appellant.

Dated:
October 19, 2022

**Donofrio, P. J.**

{¶1}     Defendant-Appellant, Michael Runnion, appeals from a Belmont County Common Pleas Court judgment convicting him of two counts of rape of a child under ten years of age and one count of gross sexual imposition, following a jury trial.

{¶2}     This case involves three children, each of whom disclosed that appellant sexually abused them.   J.M. and B.M are step-sisters.   A.G. is J.M.'s cousin.   The incidents occurred while appellant was babysitting or visiting at J.M.'s house.   Appellant was friends with J.M.'s mother and her boyfriend.   J.M. and A.G. were under ten years old at the time.   B.M. was ten years old.

{¶3}     On August 6, 2020, a Belmont County Grand Jury indicted appellant on two counts of rape of a child under ten years of age, first-degree felonies in violation of R.C. 2907.02(A)(1)(b) with the specification that appellant purposely compelled the victim to submit by force or threat of force; one count of gross sexual imposition, a third-degree felony in violation of R.C. 2907.05(A)(4); and one count of failure to verify his current residence, school, or place of employment, a third-degree felony in violation of R.C. 2950.06(F).  Appellant entered a not guilty plea.

{¶4}     Appellant filed a motion to sever the charge of failure to verify his current residence, school, or place of employment from the remaining three counts.   On September 25, 2020, the trial court sustained appellant's motion, finding that appellant would be prejudiced if his prior conviction for sexual abuse of a child was revealed to the jury.

{¶5}     The matter proceeded to a jury trial on June 8, 2021.   The jury heard testimony from all three victims and several other witnesses.  It then found appellant guilty as charged.  The trial court set the matter for a sentencing hearing.

{¶6}     At the June 22, 2021 sentencing hearing, the trial court sentenced appellant to 15 years to life in prison on each of the two rape convictions and 60 months in prison on the gross sexual imposition conviction.  The court ordered appellant to serve the sentences consecutively for a total of 35 years to life in prison.  The court also classified appellant as a Tier III Sex Offender.

{¶7} Appellant filed a timely notice of appeal on June 23, 2021. He now raises four assignments of error for our review.

{¶8} Appellant's first and second assignments of error make similar, overlapping arguments. Thus, we will address them together.

{¶9} Appellant's first assignment of error states:

THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE THE TESTIMONY OF THE SEXUAL ASSAULT EXAMINER AND THE SOCIAL WORKER THAT WAS TRUTH PROPENSITY TESTIMONY IN DISGUISE, IN VIOLATION OF EVID.R. 702 AS WELL AS U.S. CONST. AMEND. VI AND XIV.

{¶10} Appellant's second assignment of error states:

THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE LAY RECAPITULATIONS OF A CHILD WITNESS'S NARRATIVE IN VIOLATION OF THE GENERAL PROHIBITION AGAINST HEARSAY AND AGAINST THE CONFRONTATION CLAUSES OF U.S. CONST. AMEND[.] VI AND XIV.

{¶11} Appellant asserts here that the trial court erred in allowing the testimony of Leslie Doerfler, Scott Steele, and Officer Steven Veltri regarding what the victims told them during their interviews/examinations. He claims these witnesses simply recapitulated the victims' statements. He argues their testimony violated the Confrontation Clause and the prohibition against hearsay.

{¶12} Appellant acknowledges his counsel did not raise an objection to this testimony during trial and, therefore, we are to apply a plain error review. Plain error should be invoked only to prevent a clear miscarriage of justice. *State v. Underwood*, 3 Ohio St.3d 12, 14, 444 N.E.2d 1332 (1983). Plain error is one in which but for the error, the outcome of the trial would have been different. *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

{¶13} Leslie Doerfler is a sexual assault nurse examiner (SANE). She examined J.M. and A.G. Scott Steele is a forensic interviewer at Harmony House, a child advocacy

center. He interviewed all three children in this case. Martins Ferry Police Officer Steven Veltri investigated this case. He did not interview the children.

**{¶14}** Appellant first claims Doerfler's and Steele's testimonies violated the Confrontation Clause. The Confrontation Clause prohibits the introduction of testimonial statements by a non-testifying witness (unless that witness is unavailable to testify and the defendant had a prior opportunity for cross-examination). *State v. Grabe*, 7th Dist. Mahoning No. 16 MA 0061, 2017-Ohio-1017, ¶ 20 citing *Crawford v. Washington*, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**{¶15}** In this case, each of the victims took the stand, testified, and were subject to cross-examination. Thus, there is no Confrontation Clause violation here as each of the victims was a testifying witness.

**{¶16}** Appellant next argues the testimony violates the hearsay rule. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible at trial. Evid.R. 802.

**{¶17}** Certain statements are not excluded by the hearsay rule, however, even when the declarant is available as a witness. Evid.R. 803. These include, "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Evid.R. 803(4).

**{¶18}** Here appellant takes issue with Officer Veltri's testimony in addition to Doerfler's and Steele's testimony.

**{¶19}** Officer Veltri did not interview the children, but he did observe their Harmony House interviews. (Tr. 653-654). He did not testify as to anything the children said. Since the officer did not testify as to any statements made by the children, his testimony did not contain hearsay. Therefore, it did not violate the hearsay rule.

**{¶20}** Doerfler did testify as to some statements made by J.M. and A.G. She testified that J.M. reported to her that appellant touched her "pee bug" with his hand and with his penis. (Tr. 468). J.M. also told her that appellant tried to put his penis in her butt.

(Tr. 468-469). She also testified that A.G. reported to her that appellant put his fingers in her "vajayjay" and that he tried to put his penis in her "vajayjay" and in her butt. (Tr. 485).

**{¶21}** These statements by J.M. and A.G. to Doerfler, are not excluded by the hearsay rule. The children made these statements to Doerfler, a sexual assault nurse examiner, during the course of her conducting a complete physical examination of them. (Tr. 471, 488). Thus, the statements were made for the purpose of describing their medical history and were reasonably pertinent to the children's diagnosis or treatment, as allowed by Evid.R. 803(4).

**{¶22}** Steele interviewed each child. The interviews were recorded and played for the jury. (State Exs. 7, 8, 9). As to J.M. and B.M, Steele did not testify as to any statements they made. As to A.G., Steele did repeat a portion of what A.G. said regarding "the tip" going inside of her. (Tr. 616-618). But at that point, the jury had already watched A.G.'s Harmony House interview where she made this statement to Steele. Consequently, we cannot conclude the trial court committed plain error in allowing this testimony.

**{¶23}** Accordingly, appellant's first and second assignments of error are without merit and are overruled.

**{¶24}** Appellant's third assignment of error states:

THE TRIAL COURT ERRED IN ALLOWING A CONVICTION IN THE FACE OF INSUFFICIENT EVIDENCE IN VIOLATION OF U[.]S. CONST[.] AMEND[.] VI AND XIV.

**{¶25}** Here appellant asserts his convictions are not supported by sufficient evidence. Specifically, he argues the state failed to prove the timeframe during which the offenses were allegedly committed. Appellant also argues A.G. was unable to identify him as the perpetrator.

**{¶26}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict

is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113. When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence. *State v. Thorn*, 7th Dist. Belmont No. 16 BE 0054, 2018-Ohio-1028, ¶ 34, citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991) (superseded by state constitutional amendment on other grounds).

**{¶27}** A sufficiency of the evidence challenge tests the burden of production while a manifest weight challenge tests the burden of persuasion. *Thompkins* at 390 (Cook, J., concurring). Therefore, when reviewing a sufficiency challenge, the court does not evaluate witness credibility. *State v. Yarbough*, 95 Ohio St.3d 516, 543, 2002-Ohio-2126, 747 N.E.2d 216, ¶ 79. Instead, the court looks at whether the evidence is sufficient if believed. *Id.* at ¶ 82.

**{¶28}** The jury convicted appellant of two counts of rape in violation of R.C. 2907.02(A)(1)(b), which provides: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Additionally, the jury convicted appellant of one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), which provides: "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

**{¶29}** We must consider the evidence presented by the state to determine whether any rational trier of fact could have found the essential elements proven beyond a reasonable doubt.

**{¶30}** J.M.'s father was the first witness. He explained that he is divorced from J.M.'s mother and currently lives with his girlfriend and her three children. (Tr. 238-239). J.M. and her younger sister stay with him every other weekend. (Tr. 240). While J.M. was at his house during July 2020, it came to his attention that a man named "Michael" was asking J.M. for photographs on her phone. (Tr. 241-242). J.M.'s father took her

phone and was able to determine from the Instagram account that the "Michael" who was asking for photographs was appellant. (Tr. 246-247). He was familiar with appellant because he had seen appellant at J.M.'s mother's house when he picked his children up for visitation. (Tr. 246-248).

{¶31} J.M.'s mother was the next witness. She explained that she currently lives with her boyfriend and her children, including J.M. (Tr. 260-261). Her boyfriend's children live in Missouri with their mother but come and stay with them during the summer and on school breaks. (Tr. 260-262). One of her boyfriend's children is B.M. (Tr. 260). J.M. also has a step-cousin, A.G. (Tr. 263). At times, J.M., B.M., and A.G. would all spend time together at her house. (Tr. 264).

{¶32} J.M.'s mother testified she and her boyfriend were friends with appellant and his girlfriend Reagan. (Tr. 266). At times, Reagan would stay at their house. (Tr. 265). During this time, Reagan would babysit. (Tr. 268). Appellant also did work at their farm. (Tr. 270). This began in September or October of 2019. (Tr. 268-270).

{¶33} J.M.'s mother testified that in March 2020, J.M. disclosed to her that appellant had touched her. (Tr. 271). The next day, however, J.M. told her it was not true. (Tr. 272). So J.M.'s mother did not take any action at that time. (Tr. 273). Then in July 2020, J.M.'s father contacted her about the messages he had seen on J.M.'s phone from appellant asking for photographs. (Tr. 274). J.M.'s mother then asked J.M. about it and J.M. again told her that appellant had touched her. (Tr. 274). This time J.M.'s mother contacted the police. (Tr. 274).

{¶34} J.M.'s mother testified that around this time, B.M. disclosed to her father that appellant had also touched her. (Tr. 275-276). After the girls' disclosures, their parents took them to Harmony House to be interviewed. (Tr. 278-279). In the interview, J.M. disclosed that appellant had also touched A.G. (Tr. 277-278).

{¶35} J.M. testified next. She was nine years old when she testified. (Tr. 322). She stated that she knew appellant through her stepfather. (Tr. 329). She identified appellant in court. (Tr. 329). J.M. stated that appellant and his girlfriend sometimes babysat her. (Tr. 330). J.M. testified that she sees a counselor at Harmony House to talk about what appellant did to her, B.M., and A.G. (Tr. 332-333). When asked what appellant did, J.M. testified that he touched her in the area of her "pee bug" or "no-no

square." (Tr. 334-335). She stated that appellant touched her in these areas both over and under her underwear using his fingers and moving them up and down and using his tongue. (Tr. 335, 339). She stated that appellant also touched her chest both over and under her shirt. (Tr. 336-337). J.M. testified that appellant did these things more than once. (Tr. 340). J.M. further testified that appellant sometimes put his "no-no square" against her "no-no square" and moved up and down. (Tr. 346). Additionally, she described times when appellant touched her and A.G. during the same incident. (Tr. 348-349). J.M. saw appellant touch A.G. in her "no-no square." (Tr. 349).

**{¶36}** J.M. testified that when she first told her mother what appellant had done, she then said she had made it up. (Tr. 340). She did this because she was afraid she was going to get B.M. or A.G. in trouble. (Tr. 340, 350). J.M. stated that appellant told her not to tell anyone. (Tr. 350).

**{¶37}** B.M.'s mother was the next witness. B.M.'s mother testified that B.M. and her siblings were staying at their father's house for visitation in July 2020, when their father called her and told her that he was contacting the police because B.M. had told him that she had been molested. (Tr. 378-379). B.M.'s mother drove from Missouri to Ohio to be with B.M. (Tr. 379). She stated that B.M. now attends counseling. (Tr. 382-383).

**{¶38}** B.M. testified after her mother. She was 11 years old when she testified. (Tr. 395). B.M. stated that she knew appellant because he was a friend of her father's. (Tr. 403). She identified appellant in court. (Tr. 403). B.M. stated that appellant and his girlfriend would babysit her while she was at her father's house. (Tr. 404-405).

**{¶39}** B.M. testified that during a Christmas visit at her father's house, while she was lying in her room, appellant came in and touched her "private area" or "who-ha." (Tr. 406-407). She stated that appellant touched her over her clothes. (Tr. 408). She angrily told appellant to go away and he did. (Tr. 408). She stated that she told her father. (Tr. 409). B.M. stated that appellant asked on another occasion if he could touch her private area and she told him no. (Tr. 411). And on a third occasion, appellant asked her to raise her shirt and she again told him no. (Tr. 412).

**{¶40}** Doerfler was the next witness. Doerfler examined J.M. on August 6, 2020, when J.M. was eight years old. (Tr. 463). Doerfler completed a head-to-toe physical examination of J.M. (Tr. 471). J.M. reported to her that the incidents occurred "a couple

of months ago." (Tr. 463). J.M. told Doerfler that appellant touched her "pee bug" with his hand and with his penis. (Tr. 468). J.M. also told her that appellant tried to put his penis in her butt. (Tr. 468-469).

{¶41} Doerfler examined A.G. on September 7, 2020. (Tr. 481). Doerfler conducted a head-to-toe examination of A.G. (Tr. 488). A.G. reported to Doerfler that when she was four-to-six years old, appellant put his fingers in her "vajayjay." (Tr. 485). A.G. also reported that appellant tried to put his penis in her "vajayjay" and in her butt. (Tr. 485). She also reported that she saw what appellant did to J.M. and J.M. saw what appellant did to her. (Tr. 485-486). During her physical exam, Doerfler noted a small scar on A.G.'s genitals. (Tr. 490).

{¶42} A.G. testified next. She was eight years old when she testified. (Tr. 559). A.G. testified that appellant touched her and that was the reason she was in court. (Tr. 563). She testified that appellant touched her "naynay" on her skin with his fingers. (Tr. 565). She stated that it happened at her uncle's house in the basement and in J.M.'s room. (Tr. 567). A.G. stated that J.M. was normally with her when it happened. (Tr. 568-569). She also testified that appellant used his "naynay" to touch her "naynay." (Tr. 570).

{¶43} A.G. told the court that she did not have her glasses with her. (Tr. 545). She had difficulty seeing someone in the back of the courtroom. (Tr. 545). When asked if she could see appellant in the courtroom, A.G. stated that she did not think he was there. (Tr. 571). The prosecutor then showed her a photograph with multiple people in it including appellant. (Tr. 572). A.G. identified appellant in the photograph. (Tr. 572-573, 579).

{¶44} Steele was the next witness. He interviewed all three children in this case. The interviews were recorded and played for the jury. (Tr. 594, 599, 612; State Ex. 6, 7, 8).

{¶45} The final witness was Officer Veltri. Officer Veltri did not interview the children, but did observe their Harmony House interviews. (Tr. 653-654). He did not testify as to anything the children said but simply explained how he conducted his investigation.

{¶46} Construing the evidence in favor of the prosecution, as we are required to do in a sufficiency of the evidence examination, appellant's convictions were supported

Case No. 21 BE 0029

by sufficient evidence. J.M. testified that appellant touched her in the area of her "pee bug" or "no-no square" both over and under her underwear using his fingers and moving them up and down and using his tongue. J.M. also testified that appellant touched her chest both over and under her shirt. And J.M. testified that appellant put his "no-no square" against her "no-no square" and moved up and down. B.M. testified that appellant touched her "private area" or "who-ha" over her clothes. A.G. testified that appellant touched her "naynay" on her skin with his finger and with his "naynay." This testimony goes to all of the required elements of the offenses.

**{¶47}** As to identification, both J.M. and B.M. identified appellant in court. A.G. was not able to pick appellant out in court; however, she had stated that she did not have her glasses and had difficulty seeing. She was able to pick appellant out of a photograph. And J.M. testified that she saw appellant touch A.G. in her "no-no square" and that he frequently touched her and A.G. during the same incident. Thus, appellant was sufficiently identified.

**{¶48}** As to the dates of the offense, because specific dates and times are not elements of the offenses charged, indictments that charge sexual offenses against children do not need to specify the exact date of the alleged abuse if the state establishes that the offense was committed within the time frame alleged. *State v. Palmer*, 7th Dist. Mahoning No. 19 MA 0108, 2021-Ohio-4639, ¶ 19. Additionally, there is no issue with the provision of a date range where the rape victim is a child, especially when the victim lives with the perpetrator. *State v. Miller*, 7th Dist. Mahoning No. 17 MA 0120, 2018-Ohio-3430, 118 N.E.3d 1094, ¶ 23.

**{¶49}** The indictment in this case alleged that the acts were committed between December 25, 2018 and July 20, 2020.

**{¶50}** J.M.'s mother testified that appellant's girlfriend began staying at her house in September or October of 2019. (Tr. 268-270). This was when appellant and his girlfriend were around the house and providing babysitting for the children. (Tr. 268-270). She stated that she contacted the police regarding J.M.'s allegations in July 2020. (Tr. 274).

**{¶51}** B.M. stated that appellant and his girlfriend babysit her while she was at her father's house. She testified that during a Christmas visit at her father's house,

appellant came in and touched her "private area" or "who-ha." (Tr. 406-407). And J.M. testified that appellant often touched her and A.G. during the same time. (Tr. 348-349).

**{¶52}** Taking all of this testimony together and construing it in favor of the state, the evidence demonstrated that the incidents took place between September/October 2019 and July 2020, within the timeframe alleged in the indictment.

**{¶53}** Accordingly, appellant's third assignment of error is without merit and is overruled.

**{¶54}** Appellant's fourth assignment of error states:

THE TRIAL COURT ERRED IN ALLOWING A CONVICTION FROM PROCEEDINGS INFECTED WITH INEFFECTIVE ASSISTANCE OF COUNSEL.

**{¶55}** In his final assignment of error, appellant claims that the issues raised above in his first and second assignments of error, which counsel failed to object to, constituted ineffective assistance of counsel.

**{¶56}** To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. *Id.* To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, at paragraph three of the syllabus.

**{¶57}** Appellant bears the burden of proof on the issue of counsel's ineffectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶58}** As discussed above in appellant's first and second assignments of error, the trial court did not err in allowing the testimony of Doerfler, Steele, and Officer Veltri. There were no Confrontation Clause violations because each of the victims testified and were subject to cross-examination. Further, there were no hearsay rule violations. Officer

Veltri did not testify as to any statements the victims made. Doerfler did testify as to a few statements made by the victims. But these statement were properly admitted as being made to Doerfler for the purpose of describing the victims' medical history and were reasonably pertinent to their diagnosis and treatment as permitted by Evid.R. 803(4). Finally, Steele testified as to a statement A.G. made to him. But the jury had already watched the video of A.G.'s interview where she made this statement to Steele. Thus, even if appellant's counsel had objected to the above testimony, the objections would have been overruled.

**{¶59}** Furthermore, appellant cannot show prejudice in this case. As set out above, all three child-victims testified as to what appellant did to them. The jury clearly believed their testimony. Whether defense counsel objected to testimony by other witnesses would not have changed the testimony of the three victims. Ultimately, this case came down to their credibility.

**{¶60}** Accordingly, appellant's fourth assignment of error is without merit and is overruled.

**{¶61}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**