[Cite as *Cleveland v. Neal*, 2024-Ohio-1467.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 112630 |
| DANIELLE NEAL, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 18, 2024

Criminal Appeal from the Cleveland Municipal Court
Case No. 2022CRB008311

*Appearances:*

Mark D. Griffin, Cleveland Director of Law, and Stephanie Hall, Assistant Prosecuting Attorney, *for appellee.*

Eric M. Levy, *for appellant.*

LISA B. FORBES, J.:

{¶ 1}  Appellant Danielle Neal ("Neal") appeals the trial court's entry convicting her of domestic violence.  After reviewing the facts of the case and pertinent law, we affirm the trial court's decision.

## I.  Facts and Procedural History

{¶ 2}  This case involves an altercation between Joyce Swann ("Swann") and Neal that occurred at Swann's home on September 27, 2022.

{¶ 3}  Following a bench trial, Neal was found guilty of one count of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A).  On March 15, 2023, the trial court sentenced Neal to two years of community-control sanctions.

{¶ 4}  It is from this order that Neal appeals, raising the following three assignments of error:

> I.    Appellant's conviction must be vacated with appellant a[c]quitted of domestic violence as the conviction was not supported by sufficient evidence.
>
> II.    Appellant's domestic violence conviction must be vacated and the case remanded for a new trial as the conviction was against the manifest weight of the evidence presented at trial.
>
> III.    The trial court committed plain error when it admitted police body camera footage into evidence in violation of the confrontation clause of the state of Ohio and federal constitutions, the evidence was not harmless and affected appellant's substantial rights.

## II.  Trial Testimony

{¶ 5}  The court heard from four witnesses: Swann, two police officers, and Neal.  The following pertinent testimony was presented.

### A.  Swann

{¶ 6}  On September 27, 2022, Swann called the police because she wanted Neal, one of her nine children, removed from her home.  According to Swann, Neal

would not leave after numerous requests. Neal was there for approximately 30 minutes before Swann called the police.

{¶ 7} Swann was unaware that Neal was coming over that day. When Neal came inside, she asked her family if they "wanted to go to Applebee's with her." At that time, "she was in a great mood * * *. She was happy." Soon after, Neal inexplicably told her 17-year-old sister that she was going to "punch her in the face."

{¶ 8} Swann began recording Neal as a result of Neal's behavior change in order to "show her the next day."

> My daughter has a history of saying stuff and doing stuff or whatever. Like she would say something, like cuss me out, and then she'll like, "Well mom, you want to go ride with me somewhere?" And I'll be like, "You just cussed me out," you know.

{¶ 9} When Neal saw Swann recording, she said, "'B***h stop recording me.'" Then Neal grabbed Swann's phone from her hand, held it in the air out of Swann's reach, and deleted the video. At that time, according to Swann, Neal said "I'll break this mother f****r" and threw the phone on the ground, shattering the screen. Neal then punched Swann in the face. In response, Swann punched Neal back and the two "get to fighting." Neal's sisters got involved and Swann broke up the fight before asking Neal to leave. Neal refused.

{¶ 10} Swann went into her bedroom and Neal was walking around saying, "Ya'll b*****s jumped me. Ya'll hoes can't work with me one-on-one." Swann believed that Neal "wanted to fight." Swann came out of her bedroom and saw

Neal fighting with her sister who has autism. Swann stated that she again told Neal to leave, to no avail, and she and Neal began to fight again.

{¶ 11} Swann explained the details of this fight as follows:

I just grabbed her * * * to pull her, and she was like still fighting, so I ended up just hitting her. And I pulled her by her hair. And like I slung her down to the floor and I was just holding her. And she was like, "Big b***h, get off me," like asking me to let her up, and I wouldn't touch her. * * * And I said, "Danielle, if I let you up, just leave." And she was, you know, "Get off of me, get off of me." And once I let her up, she hit me again, and we just get to fighting again.

{¶ 12} During one of the fights, Swann fell back into a chair and Neal began scratching Swann's face, which ultimately left a scar. A photo of Swann's facial injuries was admitted into evidence.

{¶ 13} According to Swann, this "fight was a little bit more intense" so she decided to call the police. Once police arrived and were speaking to Swann, she heard Neal upstairs fighting with her sister. Swann invited police in, and they went upstairs to break up the fight.

**B. Police Officers**

{¶ 14} Sergeant Paul Styles ("Sgt. Styles") and Officer Zuleiky Matos ("Off. Matos") work for the Cleveland Metropolitan Housing Authority police department.

{¶ 15} Sgt. Styles testified that he and Off. Matos responded to a call at Swann's house on September 27, 2022, regarding a "female [that] wouldn't leave her mother's house." As officers arrived, Swann opened the door and identified herself to the officers. Sgt. Styles noticed that Swann had an injury on the left side of her forehead.

{¶ 16} After speaking with Swann for approximately 15 seconds, Sgt. Styles heard "a commotion going on upstairs" inside Swann's home. Sgt. Styles recalled Swann saying, "'they're fighting'" so he and Off. Matos "ran upstairs to see what was going on."

{¶ 17} Once upstairs, Sgt. Styles observed five or six children screaming in the hallway. Officers found Neal in an upstairs bathroom. Asked whether Sgt. Styles saw anyone else in the bathroom with Neal, Sgt. Styles responded, "I don't believe anyone else was in the bathroom." Neal left the bathroom and went into a bedroom where Neal began "gathering some things * * * to leave." Neal attempted to walk past Sgt. Styles and Off. Matos in an attempt to leave the house and at that point was detained.

{¶ 18} Sgt. Styles identified photos of both Neal and Swann that were admitted into evidence. According to Sgt. Styles, these photos accurately depicted Neal and Swann as they appeared when officers arrived. Sgt. Styles recalled that Neal complained that she had injured her back.

{¶ 19} Sgt. Styles and Off. Matos identified video from Off. Matos's body camera. According to the officers, this video was an accurate depiction of what took place when they arrived at Swann's house on September 27, 2022.

{¶ 20} Off. Matos testified that in his police report he stated that Swann and Neal "started fighting." However, on cross-examination, Off. Matos testified that the body-camera footage contained an accurate representation of his conversation

with Swann.  In that conversation, Swann told Off. Matos "that Neal hit her and she hit her back and then that's when they started fighting."

**C. Neal**

{¶ 21} Neal testified that her "mom and all her kids" started the fight at issue. Neal testified that she was at Swann's house for seven or eight minutes before she was "jumped" by approximately four or five people after Neal threw Swann's phone on the ground.  "They all just attacked me.  Once the phone hit the ground, they all just attacked me, and after that, it's just like that was it.  They just attacked me, dragged me through the house — my little brothers kicking and stumping me, everybody."  Neal stated that Swann hit her first and in response Neal "got on top of her.  * * * After she attacked me, I got on like — like, my body was on top of her, and then her kids was like — was attacking me, and then they got me on the floor, and they just start jumping me."

{¶ 22} According to Neal, she could not have hit anyone first because she "was on the ground."  Asked whether she fought back, Neal said, "I couldn't.  My whole body was — my whole spirit was on the ground.  Like I couldn't do nothing."  On cross-examination, when Neal was asked how Swann sustained her injuries when Neal could not fight back, Neal responded, "Well, I couldn't fight back.  I was just fighting for my life, basically."  Neal later stated that Swann could have received her injuries "from the other people that" were fighting Neal.  Neal was then asked, "[s]o you didn't fight anybody?"  To which Neal responded, "Well, physically, I

didn't. I didn't get one punch in." Neal clarified that she "couldn't fight back effectively * * *."

{¶ 23} Neal claimed that after the fight, she felt "so weak" and that she told Swann she was going to call the police, but the "next thing she kn[ew]" Swann was calling the police on her.

{¶ 24} Describing a picture of herself taken by police after the altercation, Neal stated that police "didn't take a picture of [her] injuries" but that her face was swollen in the photo. Further, Neal claimed that her injuries were not visible because she "had on a bodysuit."

{¶ 25} Neal testified that she was in fear of being injured during the altercation. However, Neal later stated that she was not afraid when Swann hit her, rather she "was shocked because [she and Swann] never got into a fight" before.

## III. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 26} "[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed," would convince the average mind of defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. at paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307, 99

S.Ct. 2781, 61 L.Ed.2d 560 (1979). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 27} Neal was convicted of domestic violence in violation of R.C. 2919.25(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2901.01(A)(3) defines physical harm to persons as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶ 28} The state presented evidence that, if believed, would support Neal's conviction for domestic violence. The court heard Swann testify that Neal, her daughter, hit Swann in the face. Further, the state presented evidence, including a photo of Swann's injury, showing that Swann suffered from a cut on the top of her forehead. Swann testified that the cut was a result of being hit by Neal.

{¶ 29} Accordingly, Neal's first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 30} A challenge to the manifest weight of the evidence "addresses the evidence's effect of inducing belief. * * * In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *State v. Wilson*, 113 Ohio St. 3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as the 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins*,

78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Reversing a conviction under a manifest weight theory "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 31} In the case at issue, Swann and Neal gave different versions of how the fight played out. Swann testified that Neal threw the first punch after Swann began recording on her cellphone. However, Neal stated that her siblings "jumped" her after she threw Swann's phone on the ground.

{¶ 32} The court saw photos of both Neal and Swann after the incident. As noted, the photo of Swann depicted an obvious open cut on her forehead; Swann testified that Neal caused this cut. In contrast, the photo of Neal did not have any obvious injuries, but she claimed that her face was "swollen" and that her injuries were to her body and could not be seen in the photograph.

{¶ 33} This court has consistently held that "when considering a manifest weight challenge, the trier of fact is in the best position to take into account inconsistencies, along with the witness's manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible." *State v. Holloway*, 8th Dist. Cuyahoga No. 101289, 2015-Ohio-1015, ¶ 42. "[A] conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version." *State v. Gardner*, 8th Dist. Cuyahoga No. 107573, 2019-Ohio-1780, ¶ 38.

{¶ 34} After reviewing the totality of the evidence presented to the court, we do not find this to be the exceptional case requiring a finding that Neal's conviction is against the manifest weight of the evidence. Neal's second assignment of error is overruled.

## C. Confrontation Clause

{¶ 35} Typically, "[w]e review evidentiary rulings that implicate the Confrontation Clause de novo." *State v. Lucas*, 8th Dist. Cuyahoga No. 112519, 2024-Ohio-842, ¶ 18, citing *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97. Neal concedes, however, that she did not object at trial to the admission of the body-camera footage, which she alleges violates the Confrontation Clause. Under these circumstances, Neal has waived all but plain error on appeal. *See State v. Houston*, 8th Dist. Cuyahoga Nos. 106470 and 106055, 2018-Ohio-3043, ¶ 25 ("We have applied the plain error doctrine to instances where the appellant failed to object to an alleged confrontation clause error at trial.").

{¶ 36} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

> By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

(Citations omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶ 37} The Confrontation Clause of the Sixth Amendment to the United States Constitution provides: "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." "The Confrontation Clause prohibits testimonial statements from being admitted unless the witness who made the statements is available to testify or the defendant has previously had an opportunity to cross-examine the witness." *State v. Mallory*, 8th Dist. Cuyahoga No. 106052, 2018-Ohio-1846, citing *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Mallory*, this court found that when "[t]he victim was present and testified at trial, * * * no Confrontation Clause violation occurred." *Mallory* at *id. See also State v. Culler*, 7th Dist. Columbiana No. 20 CO 0030, 2021-Ohio-4642, ¶ 50 (finding no Confrontation Clause violation where the "victim testified and was subject to cross-examination"); *State v. Runnion*, 7th Dist. Belmont No. 21 BE 0029, 2022-Ohio-3785, ¶ 15 (finding "no Confrontation Clause violation * * * as each of the victims was a testifying witness").

{¶ 38} Here, Sgt. Styles, Off. Matos, and Swann, who was the victim, were all heard in the body-camera footage played at trial and admitted into evidence. Each of them testified at trial and each was subject to cross-examination. Therefore, Neal's Confrontation Clause rights were not violated.

{¶ 39} Neal's third assignment of error is overruled.

{¶ 40} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
MARY EILEEN KILBANE, J., CONCUR