[Cite as *State v. Spencer*, 2024-Ohio-5809.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

    Plaintiff-Appellee,             :

    v.                                        :

JAKE SPENCER,                              :

    Defendant-Appellant.          :

No. 113667

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 12, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-675832-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Luke Habermehl and Kristen Hatcher, Assistant Prosecuting Attorneys, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Aaron T. Baker, Assistant Public Defender, *for appellant*.

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Defendant-appellant, Jake Spencer, appeals from the trial court's judgment, rendered after a jury verdict, in which he was found guilty of drug possession, drug trafficking, possessing criminal tools, and having a weapon while

under disability, and sentenced to a minimum term of eight years in prison and a maximum term of twelve years.  Finding no merit to the appeal, we affirm.

## I.    Background

{¶ 2}    A Cuyahoga County Grand Jury indicted Spencer on three counts of drug possession (heroin, cocaine, and fentanyl), three counts of drug trafficking, one count of possessing criminal tools, two counts of having a weapon while under disability, and one count of receiving stolen property.  Spencer pleaded not guilty, and the case proceeded to a jury trial.

{¶ 3}    Cleveland police detective Cody Sheets testified that he was the lead investigator on this case, which arose after the Cleveland Police Department Vice Unit surveilled three properties in Cleveland that were in close proximity:  3601 East 144th Street ("3601"), 3699 East 144th Street ("3699"), and 12500 Harvard Avenue (the "Harvard Avenue property").  Det. Sheets testified that during his surveillance of the properties at various times over the course of several weeks, he saw Spencer's car parked at 3601, saw him go in and out of 3699 several times, and observed his car parked at the Harvard Avenue property every night he conducted surveillance. Cleveland police detective Daniel Dickens testified that he assisted with the surveillance of the three properties and that he too observed Spencer entering and exiting 3699 multiple times and saw him entering the side door of 3601.  Det. Dickens said that he did not observe anyone other than Spencer go in and out of 3601 and 3699.

**{¶ 4}** Det. Sheets testified that during his investigation, he learned that either Spencer or his business, 4th Quarter Property Investments, L.L.C., owned all three properties. 3601 was vacant and did not have any working utilities; tenants Carl Lewis and his girlfriend lived at 3699; and Spencer and his girlfriend resided at the Harvard Avenue property. Det. Sheets testified that he conducted a "trash pull" at 3699 and found mail addressed to Spencer at the Harvard Avenue address, as well as miscellaneous phone receipts for "Snake," which Det. Sheets learned during his investigation was Spencer's nickname.

**{¶ 5}** Cleveland police obtained search warrants for 3601, 3699, and the Harvard Avenue property, which they executed nearly simultaneously on July 26, 2022. Spencer and his girlfriend were at the Harvard Avenue property, where the police found Spencer's car in the driveway, $1,761 in cash, two firearms, a digital scale with suspected drug residue, ammunition, miscellaneous mail, N95 masks, a money counter, and keys that opened outer and inner doors at 3699 and the side door of 3601. Spencer admitted owning the firearms, which were discovered in his bedroom and dresser drawer.

**{¶ 6}** The police also recovered three cell phones from Spencer's bedroom. State's exhibit No. 2004, a report of the "data dump" from one of the phones conducted by the Ohio Narcotics Intelligence Center revealed more than 55 text messages from various contacts, all with names such as "Crusty Lip Carol," "Fred from the store," and "Truck Ed." One text message read "Ken, this Snake. This my new number."

{¶ 7} Cleveland police sergeant Jared Durichko testified that he assisted with executing the search warrant at 3699. He said the property is an up-and-down duplex but was being used as a single-family dwelling. He testified that it was apparent that the kitchens in both apartments were being used to package and distribute narcotics because the police found digital scales, baggies, and "quite a bit" of packaged marijuana in both kitchens. The police also found a scale weight in the downstairs kitchen; Sgt. Durichko testified that such weights are commonly used by drug dealers to verify the accuracy of the digital scales. The police also found a box of N95 masks, which Sgt. Durichko testified are commonly worn by drug dealers when they are packing or mixing drugs so they do not contaminate themselves. He testified that the police also found a gift card to Massage Envy with a notation, "To Jake From Boobs" on it, as well as a bill from Cleveland Public Power addressed to Spencer at the 3699 address. The police also found two pictures of Spencer in the attic.

{¶ 8} Sgt. Durichko testified that in the downstairs kitchen of 3699, the police found a DVR that displayed video from surveillance cameras mounted on the exterior of the house. They also found an alarm in a window that would beep when it detected motion outside the house or people coming up the driveway.

{¶ 9} Sgt. Durichko testified that in his experience involving multi-location drug trafficking, such as this case, one house is typically the "trap house," where the drugs are sold, and another house is the "stash house," where the drugs are kept. He also testified that the photos of Spencer found in the attic of 3699 and the mail

addressed to him there suggested more of an interest in the property than mere ownership.

{¶ 10} Cleveland police officer Daniel Hourihan testified that during his surveillance of 3699, he observed Spencer coming and going to the property in a black Volkswagen Passat. He also observed Spencer going in the side door of 3601. Consistent with Det. Sheets's and Det. Durichko's testimony, Officer Hourihan said that over multiple days of surveillance, he did not observe anyone other than Spencer going in or leaving from 3601.

{¶ 11} Officer Hourihan testified that he helped execute the search warrant at 3601, which he was "clearly vacant." He said the countertops in the kitchen were covered in cocaine-residue particles and said the police found a strainer, a drug press, a large amount of plastic bags, a scale, and fentanyl in the kitchen. The police also found a blender with white powder residue in it, small baggies of crack cocaine, a toothbrush with suspected drug residue, a measuring cup with suspected drug residue, a Pyrex dish with suspected drug residue, credit cards, and multiple bags of cocaine, heroin, and fentanyl in the kitchen. Finally, the police found a semiautomatic loaded gun inside a plastic bag in a kitchen cabinet. The record reflects that the drugs and many of the items were sent for drug testing, and the parties stipulated to the results of that testing, which indicated that the drugs found inside 3601 and 3699 were narcotics and there was drug residue on the items.

{¶ 12} The defense presented no evidence. The trial court denied Spencer's Crim.R. 29(A) motion for acquittal, and the jury subsequently found him guilty of

drug trafficking, drug possession, possessing criminal tools, and having a weapon while under disability but not guilty of receiving stolen property. The trial court sentenced him to a minimum term of eight years in prison and a maximum term of twelve years. This appeal followed.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 13} The jury found Spencer guilty on Counts 1, 3, and 5 of drug trafficking in violation of R.C. 2925.03(A)(2) and Counts 2, 4, and 6 of drug possession in violation of R.C. 2925.11. At sentencing, the State conceded that Counts 1, 3, and 5 merged as allied offenses with Counts 2, 4, and 6, and elected to proceed to sentencing on Counts 1, 3, and 5, the drug trafficking offenses.

{¶ 14} In his first assignment of error, Spencer contends that the trial court erred in denying his Crim.R. 29(A) motion to dismiss Counts 1 through 6 of the indictment. We need not consider Spencer's argument regarding the sufficiency of the evidence on Counts 2, 4, and 6, however, because notwithstanding the jury's finding of guilt, Spencer was not convicted of those counts. A conviction consists of a guilty verdict and the imposition of a sentence or penalty. *State v. Whitfield*, 2010-Ohio-2, ¶ 12. The drug possession counts that merged into the drug trafficking counts at sentencing are not convictions because there was no sentence on those counts, and therefore, we cannot individually review the evidence supporting those findings of guilt. *State v. Worley*, 2016-Ohio-2722, ¶ 23 (8th Dist.), citing *State v. Williams*, 2012-Ohio-4693, ¶ 54 (4th Dist.), and *State v. McKinney*, 2008-Ohio-

6522, ¶ 39 (10th Dist.) (only reviewing the sufficiency of the evidence for the crime for which sentence was imposed and not the counts the merged into that crime). *See also State v. Ramos*, 2016-Ohio-7685, ¶ 14 (8th Dist.) ("When counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless."). Accordingly, we will review the sufficiency of the evidence supporting Spencer's convictions for drug trafficking on Counts 1, 3, and 5.

{¶ 15} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 2001-Ohio-112. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 16} Spencer was convicted in Counts 1, 3, and 5 of drug trafficking in violation of R.C. 2925.03(A)(2), which provides:

> No person shall knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog when the offender knows or has reasonable cause to believe that the controlled substance or a

controlled substance analog is intended for sale or resale by the offender or another person.

{¶ 17} To prove drug trafficking, the State must show that the offender possessed the drugs because "possession is a requisite element of drug trafficking under R.C. 2925.03(A)(2)." *State v. Williams*, 2023-Ohio-4667, ¶ 11 (1st Dist.), citing *State v. Arrington*, 64 Ohio App.3d 654, 656 (8th Dist. 1990).

{¶ 18} Under R.C. 2925.01(K), "possess" or "possession" is defined as "having control over a thing or substance, but may not be inferred from mere access to the thing or substance through ownership or occupation of the premises upon which thing or substance is found." Possession may be actual or constructive. *State v. Haynes,* 25 Ohio St.2d 264, 269-270 (1971). Constructive possession requires evidence that an individual exercised, or had the ability to exercise, dominion and control over an object, even though that object may not be within his immediate physical possession. *State v. Tyler*, 2013-Ohio-5242, ¶ 16 (8th Dist.), citing *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976). Presence, "coupled with another factor or factors probative of dominion or control over the contraband may establish constructive possession." *State v. Devaughn*, 2020-Ohio-651, ¶ 33 (1st Dist.). Possession is often established by circumstantial evidence, *State v. Hankerson*, 70 Ohio St.2d 87, 92 (1982), and must be determined "from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998).

{¶ 19} Spencer does not dispute that the police found numerous items used in drug trafficking, such as digital scales for weighing drugs, baggies to package

drugs, N95 masks, a money counter, cell phones with cryptic text messages, and bags of drugs in the three properties. Nevertheless, he contends the evidence was insufficient to support his convictions because the State did not present sufficient evidence that he possessed the drugs and items related to drug trafficking found in 3601. We disagree.

{¶ 20} While we recognize that mere access to a premises is not enough to infer the possession of drugs and drug-trafficking related items found therein, the State's evidence, if believed, is sufficient to demonstrate that Spencer exercised dominion and control of 3601, reflecting constructive possession of the drugs and other items the police found during execution of the search warrants.

{¶ 21} As conceded by Spencer, either he or his LLC owned all three properties. (Appellant's brief, p. 1). The police found keys at the Harvard Avenue property, where Spencer lived, that opened the doors to both 3601 and 3699. Det. Hourihan testified that he saw Spencer go into the houses at both locations. Importantly, both Det. Hourihan and Det. Dickens testified that during multiple days of surveillance at various times, they did not see anyone other than Spencer go in and out of 3601. The State produced evidence that there were no vacant or boarded-up windows at 3601 to suggest that anyone else had access to the property; it also produced evidence that the other two owners of 3601 were deceased. Accordingly, there was sufficient evidence that Spencer had dominion and control over the premises and constructive possession of the drugs and items related to drug trafficking found in 3601.

{¶ 22} With regard to 3699, we note that exclusive control of the premises is not required. *State v. Howard*, 2005-Ohio-4007, ¶ 15 (8th Dist.). "'All that is required for constructive possession is some measure of dominion or control over the drugs in question, beyond mere access to them.'" *Id.*, quoting *In re Farr*, 1993 Ohio App. LEXIS 5394, *16 (10th Dist. Nov. 9, 1993). Furthermore, an individual need not live at a particular address in order to possess drugs found inside. *State v. Edwards*, 2009-Ohio-4365, ¶ 16 (8th Dist.). Photographs of Spencer, mail addressed to him at the Harvard Avenue address, and a gift card to Massage Envy for Spencer were found at 3699, all of which, as Det. Hourihan testified, point to more than mere ownership of the property. Furthermore, Det. Hourihan saw Spencer open the side door at 3601 with a key and saw him travel between 3601 and 3699 in his black Volkswagen Passat. He also observed cars pull up to 3699 and saw people "interacting" with Spencer in the driveway.

{¶ 23} Sgt. Durichko testified that in his experience with drug cases involving multiple locations, one location is typically used as a stash house, where the drugs are kept, and another location is used as the trap house, where the drugs are sold. The State's evidence, considered in a light most favorable to the prosecution, demonstrates that is what was happening in this case; Spencer kept most of his drugs at 3601, a vacant house that only he had access to, and then sold them at 3699.

{¶ 24} We find that the State produced sufficient evidence that Spencer exercised dominion and control over all three properties and constructive

possession of the drugs and items related to drug trafficking found therein. Accordingly, Spencer's convictions for drug trafficking are supported by sufficient evidence, and the first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 25} In his second assignment of error, Spencer contends, in reliance on the same arguments asserted regarding the sufficiency of the evidence (see Appellant's Brief, p. 6), that his convictions in Counts 1 through 6 are against the manifest weight of the evidence. As discussed above, Spencer was not convicted of Counts 2, 4, and 6; accordingly, we consider only whether his convictions on Counts 1, 3, and 5 were against the manifest weight of the evidence.

{¶ 26} A manifest weight challenge questions whether the State met its burden of persuasion at trial. *State v. Hill*, 2013-Ohio-578, ¶ 32 (8th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflict in the evidence, the trier of fact clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). When considering a claim that a conviction is against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. *Id.* We will reverse a conviction as against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs

heavily against the conviction.'" *State v. McLoyd*, 2023-Ohio-4306, ¶ 40 (8th Dist.), quoting *Thompkins* at 387.

{¶ 27} This is not that exceptional case. After weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses and resolving any conflicts in the evidence, we find that the jury did not lose its way in convicting Spencer of drug trafficking. The evidence produced by the State at trial clearly established that Spencer constructively possessed the drugs and other items indicative of drug trafficking the police found at all three properties and that he was engaged in drug trafficking. The second assignment of error is therefore overruled.

## C. Ineffective Assistance of Counsel

{¶ 28} In his third assignment of error, Spencer contends that his counsel was ineffective for failing to object to various evidence at trial.

{¶ 29} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has recognized that "the right to counsel is the right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable performance and that he was prejudiced by that deficient performance, such that but for counsel's error, the result of the proceedings would have been different. *State v. Drummond*,

2006-Ohio-5084, ¶ 205. Failure to show either element is fatal to the claim. *State v. Anderson*, 2018-Ohio-2013, ¶ 23 (4th Dist.).

{¶ 30} Judicial scrutiny of a lawyer's performance must be highly deferential. *State v. Sallie*, 81 Ohio St.3d 673, 674 (1998). "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland* at 689. Debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway*, 2006-Ohio-2815, ¶ 101.

{¶ 31} Spencer contends that defense counsel was ineffective because he did not object when the State introduced evidence that either had no foundation or was hearsay. Specifically, he contends there was no foundation for Det. Sheets's testimony that the other two owners of 3601 were deceased and Spencer's LLC now solely owned the property, and the detective's testimony that a prior owner of 3601, Leon Stokes, had dementia and was in a nursing home. He argues that this testimony was also hearsay. Spencer likewise contends there was no foundation for Sgt. Durichko's testimony that scales and plastic bags found at 3699 contained narcotic residue and that the testimony was hearsay. He also contends that the State improperly referred to him as "Snake" at trial, thereby implying that one of the cell phones found by the police containing texts and names of individuals indicative of drug dealing belonged to him. He argues that because the State did not produce any evidence that he sold drugs, the jury could have only concluded that he was a drug

dealer based on this evidence, which he contends was improperly admitted without objection. Spencer's argument is without merit.

{¶ 32} Our review of the record demonstrates there was sufficient foundation for the testimony. Det. Sheets testified that he was the lead investigator on the case and his testimony regarding who owned each of the three properties, including that the other two owners of 3601 were deceased and that Leon Stokes was a prior owner who now had dementia and was in a nursing home, was based on his investigation of public records relating to the property. Det. Durichko's testimony about the items recovered from 3699 and his observation of narcotic residue on the scales and items found there were based on his personal observations at the property during the execution of the search warrant. Moreover, Spencer's argument that testimony about the narcotic residue was improper ignores the defense's stipulation to the results of drug testing conducted on the items, which indicated that the drugs were narcotics and the items were positive for drug residue. With respect to whether any of the testimony was hearsay, Spencer only asserts that the testimony to which he now objects was improper hearsay; he offers no argument to support his assertion and we will not make his argument for him. *DeMeo v. Provident Bank*, 2008-Ohio-2936, ¶ 59 (8th Dist.) (an appellate court may disregard an assignment of error where a party provides no argument on that issue).

{¶ 33} Spencer's assertion that defense counsel should have objected to the State's use of his nickname at trial is also without merit. Det. Sheets testified that he learned during his investigation that Spencer's nickname is Snake. Thus, the text

on one of the cellphones found at the Harvard Avenue property, where Spencer lived, stating, "Ken, this Snake. This my new number." clearly established that the cellphone belonged to Spencer, and accordingly, the State could properly argue to the jury that the texts and contact names such as "Crusty Lip Carol," "Fred from the store," and "Truck Ed" found on the phone indicated that Spencer was selling drugs. Furthermore, Det. Hourihan testified that he observed cars pull up to 3699 and saw people "interacting" with Spencer in the driveway. In short, the evidence produced by the State demonstrated that Spencer was storing drugs at 3601 and selling them at 3699.

{¶ 34} Because Spencer failed to establish that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced thereby, we find no ineffective assistance of counsel. The third assignment of error is therefore overruled.

{¶ 35} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR