[Cite as *State v. McGrath*, 2025-Ohio-2600.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,              :

                                                No. 114758

    v.                               :

MATTHEW MCGRATH,                         :

    Defendant-Appellant.             :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 24, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-683537-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Michael Stechschulte and Thomas Rovito, Assistant Prosecuting Attorneys, *for appellee.*

Allison S. Breneman, *for appellant.*

DEENA R. CALABRESE, J.:

{¶ 1} Following a bench trial held August 26 and 27, 2024, the trial court found defendant-appellant Matthew McGrath guilty of one count of falsification in violation of R.C. 2921.13(A)(9) and one count of attempted grand theft in violation of R.C. 2923.02 / 2913.02(A)(3). On January 13, 2025, the trial court sentenced

appellant to one year of community-control sanctions. Appellant timely appealed, arguing the trial court's guilty verdicts were against the manifest weight of the evidence and that the State's evidence was insufficient to support the verdicts. Finding no merit to the appeal, we affirm.

## I. Procedural History and Facts

{¶ 2} On August 3, 2023, the Cuyahoga County Grand Jury returned a three-count indictment charging appellant with falsification in violation of R.C. 2921.13(A)(9), insurance fraud in violation of R.C. 2913.47(B)(1), and attempted grand theft in violation of R.C. 2923.02 / 2913.02(A)(3). The charges stemmed from the disappearance and ultimate recovery of appellant's pickup truck and associated equipment.

{¶ 3} Appellant, on the record and in writing, waived his right to a trial by jury. The case proceeded to trial before the bench.

### A. Summary of Testimony

{¶ 4} The State called five witnesses at trial. We summarize their testimony in order.

#### 1. University Heights Police Officer Brandon Manley

{¶ 5} Officer Brandon Manley testified that on June 21, 2023, at approximately noon, appellant appeared in the University Heights Police Department's lobby to make a report. Officer Manley testified that appellant reported the theft of his truck, along with an attached plow, a salt spreader, and a crack filler. The interaction was captured on Officer Manley's body camera, with

footage introduced as State's exhibit No. 1. According to the time stamp, Officer Manley's interactions with appellant began at approximately 12:19 p.m.

{¶ 6} Appellant claimed he had left his vehicle in the parking lot of an apartment complex near the area of 14340 Cedar Road in University Heights, and more specifically near Milton Road, close to where he was set to begin pavement crack filling at a Papa Johns' location. On body-camera footage, appellant specifically stated that he last saw the vehicle at about 8:00 p.m. the previous evening; he did not mention that it was purportedly left in the apartment lot by an employee or friend. He completed a written statement, introduced as State's exhibit No. 2, indicating the vehicle, a 2005 GMC Sierra truck, had been "parked with equipment for crackfill," and that the "entire vehicle [was] missing stolen [sic] with equipment after 8 PM June 20, 2023." The statement cataloged and tabulated appellant's purported losses, including a Crafco crack-filling machine that he valued at $25,000, a salt spreader valued at $5,000, a mounted Lenovo computer system valued at $900, a Hiniker snowplow valued at $7,000, and the truck itself, which appellant valued at $12,000. Appellant's purported losses totaled $49,900.

{¶ 7} Officer Manley further testified that he had a colleague run the vehicle's license plate to see if it had been spotted by a license plate reader ("LPR"). Officer Manley indicated appellant's truck had not been seen on any LPR in the "immediate area." (Tr. 27.) He traveled to the Cedar Road location where appellant stated he left his vehicle "to see if [he] could find it in the parking lot" or if "it was possibly overlooked." (Tr. 31.) He was unable to locate appellant's vehicle.

## 2. Westfield Insurance Investigator Christie Paolino

**{¶ 8}** Christie Paolino testified she is a special investigator with Westfield Insurance's Special Investigations Unit and had been with Westfield for approximately nine years. Prior to joining Westfield, she had been employed in Summit County as both a deputy sheriff and a forensic examiner for the medical examiner's office.

**{¶ 9}** Paolino testified that appellant reported the theft of his vehicle and equipment to Westfield, including the VIN for the GMC truck. She testified regarding the VIN, as well as the vehicle's make, model, and exterior and interior colors.

**{¶ 10}** Paolino, along with an associate investigator, met with appellant on or about July 14, 2023, at his residence on Rocky River Drive in Cleveland. She encountered appellant outside, in his front yard, speaking with someone on his cell phone. After appellant concluded the call, she asked if they could move to a quieter spot such as the backyard. As they walked up the driveway towards the backyard, Paolino noticed "two snowplows sitting in the driveway" and recognized one as the snowplow "that he had reported stolen." (Tr. 43.) She asked appellant "if that was, in fact, the snowplow," and he responded that it was. (Tr. 43-44.)

**{¶ 11}** According to Paolino, during the interview, appellant clarified (contrary to his initial police report) that he had last seen the vehicle about two days before it was reportedly stolen. Appellant told Paolino that someone was going to pick it up and drop it off for him so he could retrieve it and begin a crack-filling job

at the Papa Johns' location in University Heights using the "pull behind" crack-filling machine. (Tr. 44.) Paolino testified that appellant told her "one of his employees had parked that vehicle in the next door parking lot of an apartment building." (Tr. 44.) She testified that appellant told her he arrived at the location at "around noon" but could not find the truck. (Tr. 44-45.) Paolino — noting that the apartment complex was large — testified that she asked appellant whether he had contacted the employee to find out if she did drop off the vehicle and if so, where. Paolino testified that appellant denied contacting his employee and that he told her he instead "immediately went to the University Heights Police Department to file a . . . stolen auto report." (Tr. 45.)

{¶ 12} Paolino testified that prior to scheduling her interview with appellant, but on the same day she met with him, she had "run a background" on the vehicle, which includes an LPR tracking system involving "vehicles that drive around and take pictures of license plates." (Tr. 46.) This yielded two license plate photos of the missing truck, both appearing to place the truck in a "filled lot of vehicles," and both at approximately 1:49 a.m. on June 21, 2023. (Tr. 46.) The location was 15375 Brookpark Road, Brook Park, Ohio, 44142.

{¶ 13} Paolino and her colleague went to the lot and found the vehicle in the same apparent location and position as in the photo, but with the license plate removed. Paolino testified that the "truck was full of just spare tires," later clarifying that they were "all thrown on top," i.e., "piled on top of the salt-box spreader, almost kind of to camouflage the truck." (Tr. 48 and 57.) The truck was boxed in with one

car in front and one on each side. She found no computer or mounting hardware and no snowplow. She confirmed the VIN matched appellant's vehicle and contacted the Brook Park Police Department.

{¶ 14} On cross-examination, Paolino admitted that when she confronted appellant regarding the snowplow in his driveway, appellant responded that while he did report that the plow was stolen, "what he meant was the mechanics attached to the truck." (Tr. 53.) She also admitted that she did not know which component was more costly. (Tr. 53.) The undercarriage component was in fact recovered, still attached to the truck. (Tr. 54.) Westfield did not pay on appellant's insurance claim. (Tr. 58.)

### 3. Brook Park Police Officer John Fisher

{¶ 15} Officer John Fisher testified that on or about July 14, 2023, he responded to a call at Quality Automotive, located at 15375 Brookpark Road, Brook Park, Ohio. The call was triggered by contact from insurance investigator Paolino, who indicated she found a stolen vehicle in the lot. The vehicle had no plate, but a VIN search "came back stolen out of University Heights." (Tr. 66.) Officer Fisher identified photos of the vehicle, including the VIN, introduced as State's exhibit Nos. 3A, 3B, and 3C, and indicated it was subsequently towed.

### 4. SCRAM Systems Program Manager Melissa Anderson

{¶ 16} The State's fourth witness, Melissa Anderson, worked as a SCRAM Systems program manager. She testified that in that capacity, she was experienced in preparing reports, including "location reports." (Tr. 80.) She testified that

"[l]ocation reports are usually for a specific client to do a history report, so all GPS data that's been recorded." (Tr. 80.)

{¶ 17} Anderson testified that as a contractor working for the county, she has an office at the Cuyahoga County's Adult Probation Department, located in the Justice Center complex. SCRAM, a private company, "provides monitoring solutions through software and hardware," including GPS location monitoring. (Tr. 81.) She testified regarding the association of each client with a specific device bearing a serial number "verified at installation." (Tr. 82.) Anderson stated that SCRAM can map GPS location points based on latitude and longitude overlayed on Google Maps.

{¶ 18} The State submitted for admission three exhibits through Anderson. State's exhibit No. 4A was a four-page GPS electronic monitoring location history report for appellant, including date and time stamps, latitude and longitude data, and conversions of the latitude and longitude points to a "normal street address" where possible.[1] (Tr. 85.) The beginning date and time for the report was June 21, 2023, at 11:21:21 a.m., and the end date and time were June 21, 2023, at 12:14:20 p.m. State's exhibit Nos. 4B and 4C consisted of a representation of the GPS coordinates overlayed on maps. Anderson testified that the location report indicated the GPS unit was at a street address of 15375 Brookpark Road, Brook Park,

---

[1] University Heights Sergeant Benjamin Feltoon later testified that as part of his investigation, he "discovered that [appellant] was subject to GPS monitoring from unrelated cases." (Tr. 106.) There is no dispute that during the pertinent time period, appellant was subject to GPS monitoring.

Ohio, on June 21, 2023, at 11:21:21 a.m.[2] At 12:14:20 p.m. the same day, it was located at 2300 Warrensville Center Road, University Heights, Ohio.

**5. University Heights Police Sergeant Benjamin Feltoon**

{¶ 19} The State called University Heights Sergeant Benjamin Feltoon as its final witness. Sergeant Feltoon recounted his investigation into appellant's stolen vehicle report. He testified that according to the report, it was stolen from "an apartment complex on Cedar Road . . . that it was said to have been parked in overnight and taken sometime overnight." (Tr. 101.) He was unable to identify any witnesses. Early in the investigation, he unsuccessfully checked LPRs to see if it might have recorded the vehicle being driven in the area around the time it was reportedly stolen.

{¶ 20} Sergeant Feltoon testified the vehicle was ultimately located in the City of Brook Park on or about July 14, 2023, at Quality Automotive. Once he confirmed it was the subject vehicle, he arranged for it to be towed to the University Heights Police Department garage, "followed by [a University Heights] patrol officer to maintain sight of it the entire time until it [was] secured in [the] garage." (Tr. 104.) In observing the vehicle, Sergeant Feltoon noted there was no crack filler or computer, but there was a salt spreader in the truck bed. Sergeant Feltoon spent

---

[2] Anderson testified, based on the report, that the address was on "State Route 17 in Brook Park, Ohio." (Tr. 87.) The report lists the street as "OH-17." We take judicial notice of the fact that State Route 17, OH-17, and (at this location) Brookpark Road are the same street. *See State v. Bradford*, 2018-Ohio-1417, ¶ 68-73 (8th Dist.).

three days trying to contact appellant for permission to process the vehicle. Because of the lack of a response, he secured a search warrant and processed the vehicle.

{¶ 21} After learning that appellant was subject to GPS monitoring during the time frame of the vehicle's disappearance and the time it was recovered, Sergeant Feltoon contacted the Cuyahoga County Sheriff's Office Electronic Monitoring Unit and "asked them if they could backtrack from when he reported the vehicle stolen to see where he was." (Tr. 106.) Sergeant Feltoon ultimately found "that approximately an hour prior to him reporting the vehicle stolen in the initial report, that he was, actually, at the location where [the vehicle] was later recovered." (Tr. 106.) He testified with respect to State's exhibit No. 4A, previously identified by SCRAM Systems Program Manager Anderson. It showed that when appellant was at the police station making his stolen vehicle report, the GPS report reflected that he was at 2300 Warrensville Center Road. Sergeant Feltoon testified that while the police department address was actually 2304 Warrensville Center Road, "City Hall is a few feet away from us and part of the same complex." (Tr. 108.)

{¶ 22} Sergeant Feltoon met with appellant about a week and a half after the vehicle was recovered. The conversation was recorded on his body camera. The State identified the footage as State's exhibit No. 5 and played it for the trial court. It depicted Sergeant Feltoon's July 26, 2023 interview of appellant. He asked appellant where he was on June 21, 2023, prior to the purported theft of his vehicle. Appellant indicated he was at the Papa Johns in University Heights, but "didn't remember prior where he was before that." (Tr. 110.) Appellant specifically denied

being at Quality Automotive at any time that day. Sergeant Feltoon then confronted appellant with the GPS data. Appellant "changed his answer" and "said that he had been [at Quality Automotive] earlier." (Tr. 110.)

## B. Crim.R. 29 Motions, Verdict, and Sentencing

{¶ 23} Following testimony, all of the State's exhibits were admitted into evidence over appellant's objections to State's exhibit Nos. 4B and 4C. The State rested. Appellant then made a Crim.R. 29 motion for acquittal as to all counts. With respect to Count 2, insurance fraud, appellant argued that the State had failed to meet its burden of proof on essential elements, including that Westfield was an insurer as defined by statute and that an insurance claim had been made. The State moved to reopen the case as to Count 2 in order to recall Westfield investigator Paolino. The trial court denied the State's motion to reopen the case. The trial court granted appellant's Crim.R. 29 motion for acquittal as to Count 2 but denied it as to Counts 1 and 3.

{¶ 24} Appellant called no witnesses, rested, and renewed his Crim.R. 29 motion as to Counts 1 and 3. The trial court denied the motion and proceeded immediately to closing arguments. After taking the matter under advisement, the court announced its verdict on August 28, 2024, entering guilty verdicts on Counts 1 and 3.

{¶ 25} The trial court sentenced appellant on January 13, 2025, imposing one year of community-control sanctions. This timely appeal followed.

## II. Analysis

{¶ 26} Appellant raises two assignments of error for our review:

I. The jury [sic] found, against the manifest weight of the evidence, that the appellant committed the acts alleged in the indictment

II. The evidence was not legally sufficient to sustain a guilty verdict

{¶ 27} We address appellant's assignments of error out of order, focusing first on sufficiency and next on manifest weight. We find no merit to appellant's assignments of error and affirm the trial court's verdicts.

### A. Sufficiency of the Evidence

{¶ 28} This court has recently reaffirmed that "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Spencer*, 2024-Ohio-5809, ¶ 15 (8th Dist.), citing *State v. Murphy*, 91 Ohio St.3d 516 (2001). *See also Cleveland v. Wiggins*, 2025-Ohio-649, ¶ 34 (8th Dist.). An appellate court views the evidence "'in a light most favorable to the prosecution'" to determine whether "'any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Spencer* at ¶ 15, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), at paragraph two of the syllabus. The inquiry is whether the prosecution has met its "burden of production" at trial. *State v. Dyer*, 2007-Ohio-1704, ¶ 24 (8th Dist.). Appellate courts are not to assess "whether the State's evidence *is to be believed*, but whether, *if believed*, the evidence against a defendant would support a conviction."

(Emphasis added.) *Id.* "'In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.'" *Cleveland v. Williams*, 2024-Ohio-3102, ¶ 10 (8th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *see also Cleveland v. Neal*, 2024-Ohio-1467, ¶ 26 (8th Dist.); *Wiggins* at ¶ 34.

{¶ 29} The trial court convicted appellant of two offenses. The first was a violation of R.C. 2921.13(A)(9) (falsification), which required the State to prove that appellant knowingly made a false statement "with purpose to commit or facilitate the commission of a theft offense." The second offense was a violation of R.C. 2923.02 / 2913.02(A)(3) (attempted grand theft), which required the State to prove that appellant, "[b]y deception," knowingly attempted to deprive another of a sum exceeding $7,500.

{¶ 30} The State's evidence was sufficient to support the trial court's verdicts. The evidence was sufficient to prove that appellant knowingly made false statements and that his purpose was to commit or facilitate a theft offense, and that he was thereby attempting, by deception, to knowingly deprive his insurer of a sum exceeding $7,500. The State presented evidence that appellant made statements to the University Heights Police Department, in the form of a written statement and a verbal report, captured on a police body camera, of the alleged theft of his truck and equipment. Appellant stated that the vehicle went missing overnight after being parked at an apartment complex in University Heights. He claimed to have seen the vehicle the night before making his police report. He reaffirmed many of his

statements in his later interview with University Heights Police Sergeant Feltoon, specifically denying he had been to Quality Automotive earlier that day until confronted with GPS data. He reported his total losses as $49,900. He initiated an insurance claim with Westfield Insurance, indicating to insurance investigator Paolino that his losses were between $50,000 and $75,000.

{¶ 31} The evidence was sufficient to establish that appellant's statements reporting the theft of his vehicle were false and that appellant knew it. His story began to unravel under questioning from insurance investigator Paolino. She spotted the reportedly stolen snowplow, which appellant valued at $7,000, on appellant's driveway. When she confronted appellant, he admitted it was the same snowplow but shifted his story to say that only one component of the snowplow had been stolen. Furthermore, appellant had told Officer Manley that he had last seen the vehicle the night before the reported theft, at about 8:00 p.m. This is inconsistent with his statement to Paolino; appellant told her he had not seen the vehicle for about two days before it went missing and that an employee was going to leave it in the University Heights apartment parking lot. Paolino asked appellant whether he had contacted the employee before going to police. Appellant told Paolino that he had not, further suggesting that he was dissembling under even minimal scrutiny.

{¶ 32} More importantly, GPS data tied appellant to the vehicle-recovery site, reflecting both that he was actually there just an hour before reporting his vehicle stolen and that he was dishonest with police about his whereabouts. On the

day appellant made the stolen vehicle report, June 21, 2023, GPS data indicated he arrived at the University Heights City Hall complex at approximately 12:09 p.m.[3] According to body-cam footage, Officer Manley began taking appellant's stolen vehicle report approximately ten minutes later, at 12:19 p.m. These facts are sufficient to establish the reliability of the GPS monitor and State's exhibit No. 4(A), the GPS location report. The same GPS location data placed appellant at latitude 41.417015 and longitude -81.804558 an hour earlier, at 11:21 a.m. Those coordinates resolve to the car lot of Quality Automotive on Brookpark Road, where the vehicle was ultimately located and which is 2.4 miles from the home address appellant provided to police.[4]

{¶ 33} In appellant's July 26, 2023 interview with University Heights police, recorded on video, Sergeant Feltoon referenced the stolen vehicle report date of June 21, 2023, confirmed that appellant was familiar with Quality Automotive, and asked appellant: "Were you at Quality Automotive any time that day?" Appellant shook his head and mumbled, "I don't know . . . shouldn't have been. No." With no further prompting, appellant immediately stated: "I don't even know what's going

---

[3] State's exhibit No. 2, introduced through Officer Manley, indicates that the University Heights Police Department is located at 2304 Warrensville Center Road, University Heights, Ohio.

[4] "'The Court may take judicial notice of Google Maps to determine distances and locations.'" *Bradford*, 2018-Ohio-1417, at ¶ 71 (8th Dist.), quoting *Mitchell v. TVA*, 2015 U.S. Dist. LEXIS 56527, *2-3, fn. 1 (E.D.Tenn. Apr. 30, 2015).

on with this." In short, he continued to be dishonest with Sergeant Feltoon during the July 26, 2023 interview.

{¶ 34} We do not independently weigh the evidence in our sufficiency analysis. *State v. Hill*, 75 Ohio St.3d 195, 205 (1996). There was sufficient evidence to convict appellant of both falsification and attempted grand theft. The State's evidence, if believed, supported findings that he knowingly made false statements with the purpose of committing or facilitating a theft offense and that by deception he knowingly attempted to commit grand theft. The State met its burden of production, and a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *Dyer*, 2007-Ohio-1704, at ¶ 24 (8th Dist.); *Spencer*, 2024-Ohio-5809, at ¶ 15 (8th Dist.). Appellant's second assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 35} "In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion." *State v. Hill*, 2013-Ohio-578, ¶ 32 (8th Dist.). "In our manifest weight review of a bench trial verdict, we recognize that the trial court serves as the factfinder, and not the jury." *Cleveland v. McCoy*, 2023-Ohio-3792, ¶ 26 (8th Dist.), citing *State v. Travis*, 2022-Ohio-1233, ¶ 28 (8th Dist.); *see also Cleveland v. Hale*, 2024-Ohio-2712, ¶ 4 (8th Dist.) (analyzing manifest-weight issue in context of bench trial); *Cleveland v. Clark*, 2024-Ohio-4491, ¶ 45 (8th Dist.) (same); *State v. Kennedy*, 2024-Ohio-1586, ¶ 65 (8th Dist.) (same). Accordingly, we have previously written:

"[T]o warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed, and a new trial ordered."

*Kennedy* at ¶ 65, quoting *State v. Strickland*, 2009-Ohio-3906, ¶ 25 (8th Dist.). An appellate court will reverse on manifest weight "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. McLoyd*, 2023-Ohio-4306, ¶ 40 (8th Dist.), quoting *Thompkins*, 78 Ohio St.3d at 387. This is because "in a manifest-weight review, the weight to be given the evidence and the credibility of the witnesses are primarily for the finder of fact." *State v. Metz*, 2019-Ohio-4054, ¶ 70 (8th Dist.); *see also Cleveland v. Johns*, 2024-Ohio-3301, ¶ 24 (8th Dist.). Indeed, an appellate court ""may not substitute its own judgment for that of the finder of fact."" *Id.*, quoting *State v. Harris*, 2021-Ohio-856, ¶ 33 (8th Dist.), quoting *State v. Maldonado*, 2020-Ohio-5616, ¶ 40 (8th Dist.).

{¶ 36} Here, the State introduced substantial evidence to establish, beyond a reasonable doubt, that appellant committed the offenses of falsification and attempted grand theft. He reported to University Heights police that his vehicle and equipment were stolen while parked overnight at a University Heights apartment complex. He valued the lost property at $49,900. He initiated a claim with Westfield Insurance for the lost property. As discussed in our sufficiency analysis, the testimony and the State's exhibits established that appellant's report was false and that he made the deceptive report in a thwarted effort to collect insurance proceeds from Westfield. Insurance Investigator Paolino met with appellant and

quickly spotted inconsistencies in his story. She saw the reportedly missing snowplow in his driveway, and appellant then changed his story after acknowledging the plow in the driveway was the one he reported missing. He stated, contrary to his police report, that he last saw the vehicle about two days before it went missing and that it was actually left in the University Heights apartment parking lot by an employee. When asked the logical question of whether he contacted the employee before going to police, he indicated he had not.

{¶ 37} The evidence reflects that Paolino's suspicions were confirmed by concrete evidence of appellant's movements on the day he reported the vehicle missing. GPS placed appellant at the vehicle-recovery site, Quality Automotive, just one hour before he made his stolen vehicle report. When asked during the final police interview if he had been to Quality Automotive at any time the day he made his stolen vehicle report, appellant denied having been there. This entire exchange, including appellant's verbal responses and body language, was viewed by the trial court during Sergeant Feltoon's testimony. There was ample evidence to support the trial court's ultimate conclusion that appellant filed a false police report with the intention of securing insurance proceeds well in excess of $7,500.

{¶ 38} We have independently reviewed the police-video footage, the GPS location report, the State's remaining exhibits, and the testimony of each witness. On this record, we cannot conclude that this is the exceptional case where the trial court clearly lost its way and created a manifest miscarriage of justice. Appellant's first assignment of error is overruled.

{¶ 39} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

MARY J. BOYLE, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)